**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**LACKIE DRUG STORE, INC., PLAINTIFF**

**V. 4:20CV1515 JM**

**ARKANSAS CVS PHARMACY, LLC, et al, DEFENDANTS**

**ORDER**

Pending are the Joint Motion to Dismiss filed by all Defendants, the Motion to Dismiss filed by ESI,[1] the Motion to Dismiss filed by Optum,[2] and Optum's Supplemental Motion to Dismiss. The motions have been fully briefed and are ripe for consideration.

Lackie filed suit against thirteen defendants. Defendants MedImpact Healthcare Systems, Inc and MedImpact Direct, LLC were voluntarily dismissed. The Court granted Pharmaceutical Care Management Association's motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim. The Court granted the motion to compel arbitration and dismissed Arkansas CVS Pharmacy LLC, CVS Health Corporation, Caremark LLC, and CaremarkPCS LLC. Six defendants remain: Express Scripts, ESI Mail Processing, Inc., ESI Mail Pharmacy Service, Inc, and Express Scripts Pharmacy (referred to collectively as ESI), OptumRx, Inc. and OptumRx Pharmacy, Inc. (referred to collectively as Optum).

In separate motions to dismiss, ESI and Optum seek dismissal of Lackie's claims against them based upon Lackie's failure to follow the dispute resolution clauses in their respective pharmacy provider agreements. ESI also contends that its pharmacy provider agreement contains a forum selection clause which requires all litigation arising under the agreement to be brought in

[1] Express Scripts, ESI Mail Processing, Inc., ESI Mail Pharmacy Service, Inc, and Express Scripts Pharmacy are referred to collectively as ESI.
[2] OptumRX, Inc. and OptumRX Pharmacy, Inc. are referred to collectively as Optum.

the Eastern District of Missouri. ESI asserts that the Court should sever the claims against it and transfer the claims to the proper court. In the joint motion to dismiss, Defendants argue that the Second Amended Complaint (the "Complaint") does not satisfy Rule 8 and that Lackie failed to exhaust administrative remedies as stated in Ark. Code Ann.§ 17-92-507(c)(4)(A). In addition, Defendants argue specific reasons that each claim in the Complaint should be dismissed.

Although the parties disagree, the Court will consider the individual motions to dismiss before analyzing the joint motion. If the individual arguments made by ESI and Optum, that the Complaint should be dismissed based upon a failure to follow the dispute resolution process or that the case should have been brought in a different jurisdiction, have merit it would be improper for the Court to rule on the remaining arguments.

## I. Rule 12(b)(6) Standard

Each of these motions is brought pursuant to Rule 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65, 167 L.Ed.2d 929 (2007) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508, n. 1, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely")). Although "[g]reat precision is not required of the pleadings," the complaint should state how, when, and where the cause of action occurred. *Gregory v. Dillard's Inc.,* 494 F.3d

694, 710 (8th Cir. 2007). "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Bell Atlantic*, 127 S.Ct. at 1966 (internal citations omitted).

## II. Analysis

### A. ESI

ESI asks the Court to dismiss Lackie's claims against it because Lackie failed to follow the dispute resolution process provided in the Express Scripts Inc. Pharmacy Provider Agreement (the "ESI Agreement"). There is no dispute that Lackie and ESI executed the ESI Agreement on July 15, 2016. A redacted copy of the ESI Agreement with signatures by a representative of Lackie and Express Scripts Inc. is attached to the motion.[3] (ECF No. 36-1). If dismissal is not warranted based upon the dispute resolution clause, ESI asks the Court to enforce the forum selection clause contained in the ESI Agreement which states, "[a]ll litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in the U.S. District Court for the Eastern District of Missouri. …" (ECF No. 36-1 at p. 7-8). Although ESI asks the Court to sever and transfer its portion of the case only in the alternative to dismissal, the Court finds that enforceability of the forum selection clause should be the first consideration here.

"The Eighth Circuit Court of Appeals 'has expressed its inclination to find that federal law governs resolution of [the enforceability of a forum selection clause] in diversity cases.'" *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1179 (E.D. Ark. 2019) (quoting *U.S. Bank Nat'l*

[3] "In a case involving a contract," like this one, "the court may examine the contract documents in deciding a motion to dismiss." *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) (quoting *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003)).

*Ass'n v. San Bernardino Pub. Emps.' Ass'n*, No. 13-2476, 2013 WL 6243946, at *2 (D. Minn. Dec. 3, 2013) (citing *Rainforest Café, Inc. v. EklecCo*, L.L.C., 340 F.3d 544, 546 (8th Cir. 2003)); *see also Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 59-61 (2013). "Forum selection clauses are prima facie valid and are enforced unless they are unjust or unreasonable or invalid for reasons such as fraud or overreaching." *Doshier*, 417 F. Supp.3d at 1180 (quoting *M.B. Rests., Inc. v. CKE Rests., Inc*., 183 F.3d 750, 752 (8th Cir. 1999) (citing *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause. Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Atl. Marine*, 571 U.S. at 62. "[T]he plaintiff's choice of forum merits no weight." *Id.* at 63. When the contract contains a forum selection clause, the Court considers only the "public interests" concerning transfer, "which will rarely defeat a transfer motion." *Id.* at 64. The party acting in violation of the forum selection clause "must bear the burden of proving that public interest factors overwhelmingly disfavor a transfer." *Id.* at 67.

Section 7.12 of the ESI Agreement provides in pertinent part:

> All litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in the U.S. District Court for the Eastern District of Missouri or, as to those lawsuits to which the Federal Court lacks jurisdiction, before a court located in St. Louis County, Missouri.

(ECF No. 70 at p. 25).

Lackie argues that public interest dictates against transfer of the case based upon judicial economy and Arkansas' interest in applying Arkansas Code Annotated § 17-92-507 ("Section 507"). Lackie points out that its conspiracy claim encompasses multiple defendants, not just ESI Defendants. Lackie contends that severing and transferring the claims against ESI would require

multiplicity of litigation against co-conspirators in separate district courts on the same issues, claims, and facts. However, judicial economy is not a significant factor because litigation of the case has only progressed to the motion to dismiss stage. Discovery has not commenced. As for the application of Arkansas's unique statute regulating the actions of PBMs, it is for the Eastern District of Missouri to determine whether Arkansas law applies and its interpretation. Further, it is for the Missouri court to interpret the dispute resolution clause in the ESI Agreement. The Court finds that this is not the rare case where public interest defeats the forum selection clause bargained for between the parties. Lackie's claims against ESI are, therefore, severed and transferred to the Eastern District of Missouri. ESI's motion is granted.

**B. Optum**

Optum contends that AmerisourceBergen Drug Corporation ("ABDC"), a Pharmacy Services Administrative Organization ("PSAO"), entered into the Pharmacy Network Agreement ("Optum Agreement") as the authorized contracting agent for Lackie. Optum has provided a redacted copy of the Optum Agreement. (ECF Nos. 39-1). The signature page is attached as a supplement to Optum's motion to dismiss. (ECF No. 104-1). Section 10 of the Optum Agreement sets out the dispute resolution process which requires the aggrieved party to provide written notice to the other party identifying the nature and scope of the dispute. If after thirty days the parties cannot resolve the dispute, they may request in writing a meeting where each party will have an officer present. If the parties do not resolve the dispute, either party may request mediation. (ECF No. 39-1 at p. 19).

In response, Lackie disputes that it has a contract with Optum. *See* ECF No. 67 at p. 2 ("if there is a contract, which there is not . . ."); *id*. at p. 4 ("no supporting proof to show a contract existed between the parties"). Lackie goes on to argue that, if there is a contract, Optum has

failed to prove that the terms in the Agreement were "effectively communicated" to Lackie. In Plaintiff's First Supplement, Lackie appears to abandon the "no contract" argument and focuses solely on the second argument: "The only proof OptumRx submitted was an affidavit of a vice president describing a provider agreement, but OptumRx failed to demonstrate that its provider agreement was 'effectively communicated' to the Plaintiff." (ECF No. 78 at p. 2). However, later in the Second Supplement, Lackie argues that "these two defendants [OptumRx and OptumRx Pharmacy] failed to prove the existence of a contract between them and Lackie." (ECF No. 83 at p. 2). Finally, in the latest response, Lackie states that "[t]he motion must fail because it has no supporting proof to show a contract existed between the parties here." (ECF No. 105 at p. 2). Optum has provided a redacted copy of the Agreement signed by Cassie Tichey, SVP of Network Relations for OptumRx on December 9, 2014, and Peter J. Kounelis, Sr. Director of Provider Network Business Development for ABDC on September 22, 2014. (ECF No. 104-1). Without explanation, Lackie states that the signature page of the Agreement is not signed or dated by any party. (ECF No. 105 at p. 2).

Optum contends that Lackie appointed ABDC as its agent to contract with OptumRx. In response to the "no contract" argument, Optum asserts that without a contractual relationship with Optum, there would be no basis for Lackie's claims. Lackie, however, contends that there is no proof of an agency relationship between itself and the ABDC signatory on the Optum Agreement because it was signed "two years before there was even a possibility of an agency." *Id*. at p. 3.

Although Optum's arguments are well taken, the Court finds that there is insufficient evidence of a contract between ABDC and Lackie at this point in the litigation.[4] Lackie's alleged

[4] The Court finds the declaration of Joshua Van Ginkel of OptumRx, Inc. insufficient to prove a contract between ABDC and Lackie.

failure to abide by the terms of a negotiated contract may be determinative of its claims against Optum. However, the agreement between Lackie and ABDC is not in the record and there is no evidence to support Optum's argument that Lackie knew or should have known about the dispute resolution requirements. Optum's motion to dismiss is denied.

**C. <u>Joint Motion to Dismiss</u>**

In the joint motion to dismiss, Defendants argue that the Complaint contains conclusory, group-based allegations that are insufficient to satisfy Rule 8. The Court disagrees. Lackie's allegations provide sufficient notice to OptumRx and OptumRx Pharmacy, the only remaining defendants.

Defendants argue that the Complaint should be dismissed because Lackie did not utilize the administrative appeal procedures established by Arkansas Code Annotated Section 17-92-507(c)(4). As Defendants note, the Arkansas Commissioner of Insurance requires a pharmacy provider, or a pharmacy services administrative organization ("PSAO"), to make reasonable efforts to exhaust any internal appeal requirements of the PBM prior to filing a complaint with the Arkansas Insurance Department ("AID"). *See* Ark. ADC 54.00.118-9(B)(2) now Ark. ADC 003.22.118-9 (2022). The AID regulation further states that the "AID shall additionally coordinate with the Arkansas Attorney General's Office for referral to that Office of complaint cases which reasonably appear to show a pattern or practice of violations by a PBM." AR ADC 003.22.118-9(B)(4).

Defendants contend that the Complaint should be dismissed because Lackie did not plead exhaustion or an exception to the exhaustion requirement in the Complaint. In response, Lackie argues that the Defendants do not offer the required appeals process, that the allegations in the

Complaint are not subject to administrative remedies, that seeking an administrative remedy for these claims is futile, and that Defendants should be judicially estopped from arguing this point.

The burden to prove an affirmative defense is, in general, on the defendant and a plaintiff is not required to plead exhaustion in the complaint. *See, e.g., Jones v. Bock*, 549 U.S. 199, 216, 127 S. Ct. 910, 921, 166 L. Ed. 2d 798 (2007). ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *Weatherly v. Ford Motor Co*., 994 F.3d 940, 943 (8th Cir. 2021) ("[I]n general, a defendant cannot render a complaint defective by pleading an affirmative defense, and so the possible existence of a limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense"). Dismissal based upon an affirmative defense is appropriate "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Id.* (quoting *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298-99 (10th Cir. 2018).

Lackie has not included any factual statement in the Complaint regarding exhaustion of the administrative remedy contemplated by Section 507. Therefore, the Court cannot dismiss the Complaint based upon this affirmative defense. The issue may be properly brought before the Court in a motion for summary judgment. Defendants' motion to dismiss is denied on this point.

**a. ADTPA**

Defendants argue that Lackie's Arkansas Deceptive Trade Practices Act ("ADTPA") claim must be dismissed because it is not plead with particularity and Lackie does not have standing under the ADTPA. The Court finds this argument to be without merit. Courts in this circuit have held that plaintiffs alleging a violation of the ADTPA must plead the claim with

particularly, identifying the "who, what, where, when, and how" of the claim. *Streambend Props. II, LLC v. Ivy tower Minneapolis*, LLC, 781 F.3d 1003, 1013 (8th Cir. 2015). Lackie alleged that the Defendants violated "specific Arkansas laws that, under the law, constitute actionable conduct under the ADTPA." *Allcare Specialty Pharmacy, LLC v. OptumRX, Inc*., 2017 WL 5571356, at *5 (E.D. Ark. Apr. 6, 2017). Lackie claims that Defendants failed to provide a MAC list as required by Ark. Code Ann. § 17-92-507(c)(1). Section 507(g)(1) states that a PBM's failure to follow the law is a deceptive and unconscionable trade practice under the ADTPA.

Defendants also argue that, even if the claim is sufficiently plead, the allegations in the Complaint do not state a claim under the ADTPA. The elements of an ADTPA claim are "(1) a deceptive consumer-oriented act or practice which is misleading in a material respect, and (2) injury resulting from such act." *Skalla v. Canepari*, 430 S.W. 3d 72, 82 (Ark. 2013). "A private cause of action does not arise absent a showing of both a violation and resultant damages." *Wallis v. Ford Motor Co*., 362 Ark. 317, 208 S.W.3d 153 (2005).

Defendants argue there is nothing in the Complaint about a consumer-oriented act or practice causing damage to Lackie. They argue that ADTPA claims are not available to resolve disputes between market competitors as is alleged by Lackie. In fact, Lackie's claims do not involve the consumer paying too much, but instead that health care plans are not paying enough. They also argue that Lackie fails to explain how Defendants' conduct proximately caused any loss. Defendants further contend that if the Court finds that Lackie has stated a claim under the ADTPA the claim can only be brought against PBMs under the statute, not PBM affiliates.

The question of whether the conduct alleged in the Complaint is a consumer-oriented act or practice has been considered in this district. Judge Miller explained in *Allcare*, "[S]ome courts have questioned whether business-to-business activity can be a deceptive and unconscionable

trade practice under the ADTPA. *See, e.g.*, *Stonebridge Collection, Inc. v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015). That issue need not be addressed here because Arkansas law already declares that violating section 17-92-507 . . . is a deceptive and unconscionable trade practice as a matter of law." *Allcare*, 2017 WL 5571356, at *5 (citing Ark. Code Ann. § 17-92-507(c)(4)(g)).

As for allegations of proximate cause, Lackie adequately alleges that Defendant PBMs' actions proximately caused damage. Specifically, Lackie alleges that Defendant PBMs' reimbursement system (1) forces Lackie Drug and the other Class members to fill prescriptions without the benefit of the current MAC and often times upon outdated information with full knowledge and with the purpose of causing Lackie Drug and Class members to lose money in the transaction because their cost for the particular drug is higher than what they PBM will provide them as an insurance reimbursement; (2) reimburses Lackie Drug and members of the Class less money for its prescription fills than what Arkansas CVS Pharmacy and other Defendant PBM affiliates are provided for the same prescription drugs; and (3) through Defendants' forced sale of prescription drugs to consumers without fair and proper, but instead anticompetitive insurance reimbursements, Plaintiff and the Class have been and continue to be compelled to habitually and routinely sell prescriptions to a consumer at an actual financial loss. (Complaint, ECF No. 18 at ¶¶ 33, 39, 61). The Court finds Lackie has sufficiently plead a plausible ADTPA claim. Accordingly, Defendants' motion to dismiss the ADTPA claim is denied as to OptumRx.

The Court agrees that an ADTPA claim can only be brought against a PBM defendant, and therefore, the motion to dismiss the ADTPA claim against OptumRx Pharmacy is granted.

**b. Trade Practices Act**

Defendants contend that Lackie's Trade Practices Act claim must be dismissed because there is no private right of action to enforce that statute. The Court agrees. While the TPA "gives the state authority to establish rules of conduct and to punish offenders, it provides no private right of action to [private parties] for violations of the Act or of regulations promulgated under the Act's authority." *Design Prof'ls Ins. Co. v. Chicago Ins. Co.,* 454 F.3d 906, 911-912 (8th Cir. 2006); *Southeastern Emergency Physicians LLC v. Ark. Health & Wellness Health Plan, Inc,* 2019 WL 13193960, at *13 (E.D. Ark. Dec. 9, 2019) ("[N]o private right of action exists under the [Arkansas Insurance Trade Practices Act])." Defendants' motion to dismiss the Trade Practices Act claim is granted.

**c. Unfair Practices Act**

Section 208(a) of the UPA provides:

> The secret payment or allowance of rebates, refunds, commissions, or unearned discounts is an unfair trade practice, whether in the form of money or otherwise or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions to the injury of a competitor and where the payment or allowance tends to destroy competition.

Ark. Code Ann. § 4-75-208 (West). Lackie contends that it has satisfied the pleading requirements for a UPA claim by alleging that PBMs deny it access to the MAC list and provide "higher payments to its affiliates" in an effort to destroy competition by independent pharmacies. The Court agrees. Lackie has stated that PBMs extend a special service or privilege to affiliates by granting them access to the MAC list, that Lackie is not granted access, and that the privilege is given in order to destroy competition. Defendants' motion to dismiss the UPA claim is denied as to OptumRx.

The motion is granted as to OptumRx Pharmacy because there is no indication in the Complaint that OptumRx Pharmacy controls access to Optum's MAC list or Optum's reimbursement payments to Lackie.

**d. Conspiracy**

To prove conspiracy, Lackie must show "a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in and of itself unlawful, oppressive or immoral, by unlawful, oppressive or immoral means, to the injury of another." *Wallace v. XTO Energy, Inc.*, 2014 WL 4202536, at *4 (E.D. Ark. Aug. 22, 2014) (quoting *Born v. Hosto & Buchan, PLLC*, 372 S.W.3d 324, 331 (Ark.2010)). Because all the claims against OptumRx Pharmacy have been dismissed, Lackie cannot prove that two or more persons conspired against it. Moreover, the Complaint lacks any specific allegation of conspiratorial activity by OptumRx Pharmacy because there is no indication that OptumRx Pharmacy controls access to Optum's MAC list or Optum's reimbursement payments to Lackie. For these reasons, the conspiracy clam is dismissed.

**e. Declaratory Judgment**

Pursuant to Ark. Code Ann. § 16-111-101.et. seq, Lackie seeks a declaration that defendants have violated Section 507. The Declaratory Judgment Act, Ark. Code Ann. § 16–111–101 *et. seq*. (1997) is remedial, and its purpose is to afford relief from uncertainty and insecurity by declaring "rights, status, and other legal relationships whether or not further relief is or could be claimed." *Hardy v. United Servs. Auto. Ass'n*, 233 S.W.3d 165, 167 (Ark. App. 2006) Ark. Code Ann. §§ 16–111–102 and 103. The act is to be liberally construed and administered. Ark. Code Ann. § 16–111–102(c). In addition, when declaratory relief is sought, "all persons shall be made parties who have or claim any interest that would be affected by the

declaration." Ark. Code Ann. § 16–111–106(a). A party seeking declaratory relief must plead the following facts for the claim to survive a motion to dismiss: "(1) there must be a justiciable controversy (a controversy in which a claim or right is asserted against one who has an interest in contesting it); (2) the controversy must be between parties with adverse interests; (3) the party seeking declaratory relief must have a legally protectable interest in the controversy; and (4) the issue must be ripe for judicial determination." *Bradley v. XTO Energy, Inc*., No. 3:21-CV-00079-BSM, 2021 WL 3040758, at *3 (E.D. Ark. July 19, 2021) "'[a] declaratory-relief action is not a substitute for an ordinary cause of action. Rather it is dependent on and not available in the absence of a justiciable controversy.'" *Id*. (quoting *Martin v. Equitable Life Assur. Soc'y of the U.S.*, 40 S.W. 3d 733, 736 (Ark. 2001)) "A declaratory judgment declares rights, status, and other legal relationships whether or not further relief is or could be claimed." *McDougal v. Sabine River Land Co*., 461 S.W.3d 359, 363.

Lackie has stated a justiciable controversy against OptumRx under the ADTPA and the UPA. The interests of Lackie and OptumRx appear to be adverse. Lackie's interest in the controversy appears to be legally protectable. OptumRx has failed to show that the declaratory relief sought is not ripe for judicial review. This claim for declaratory judgment will be allowed to proceed. While it may be duplicative of Lackie's ADTPA and UPA claims, that is an insufficient reason alone to dismiss it. *Bradley v. XTO Energy, Inc.*, No. 3:21-CV-00079-BSM, 2021 WL 3040758, at *3 (E.D. Ark. July 19, 2021) (citing *Collins v. SEECO, Inc*, 2012 WL 2309080 at *2 (E.D. Ark. 2012) ("The request for a declaratory judgment is probably suspenders over the belt of the contract claim. But there is no harm in leaving this request for relief in.")).

As stated above, all claims against OptumRx Pharmacy have been dismissed. Therefore, no declaratory relief against it is available.

**f. Preemption**

Defendants have failed to establish that Lackie's claims are preempted by the Medicare statute. *See PCMA v. Rutledge*, 140 S. Ct. 812 (2020).

## III. <u>Conclusion</u>

For the reasons stated, ESI's Motion to Dismiss (ECF No. 35) is GRANTED in part and DENIED in part. Lackie's claims against the Express Scripts, ESI Mail Processing, Inc., ESI Mail Pharmacy Service, Inc, and Express Scripts Pharmacy are severed. The Clerk is directed to transfer these claims to the Eastern District of Missouri.

Optum's Motions to Dismiss (ECF No. 39 and 104) is GRANTED in part and DENIED in part. The Joint Motion to Dismiss filed by all Defendants (ECF No. 37) is GRANTED in part and DENIED in part. Lackie's claims are dismissed with the exception of the ADTPA, UPA, and declaratory judgment claims against Defendant OptumRx. The claims against Defendant OptumRx Pharmacy are dismissed.

IT IS SO ORDERED this 2nd day of November, 2022.

James M. Moody Jr
United States District Judge