**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**
**Case No. 4:20-CV-01515-JM**

**LACKIE DRUG STORE, INC.,**                                              **PLAINTIFF,**
**on behalf of itself and all others**
**similarly situated,**

**vs.**

**OPTUMRX, INC.;**                                                        **DEFENDANT.**

**OPTUMRX, INC.'S REPLY**
**IN SUPPORT OF ITS MOTION TO: (i) DENY CLASS CERTIFICATION AND (ii)**
**STAY CASE PENDING ARBITRATION (DKT. 240)**

## INTRODUCTION

Lackie's opposition (and its procedurally improper cross-motion) rests on the false premise that OptumRx waived its arbitration rights as to members of the still-putative class by actively litigating against the named plaintiff, Lackie. But before a class is certified, members of the putative class are not parties, so their claims are not before the court. Whatever arguments OptumRx made or didn't make against Lackie—the only arguments the Eighth Circuit addressed in the appeal—cannot constitute a waiver with respect to a putative class of hundreds. That means OptumRx retains its arbitration rights with respect to members of the putative class. Because all class members would be bound to arbitrate their claims against OptumRx individually and could not join a class action in court, this Court should grant OptumRx's motion and deny class certification.

In contorting itself to build a theory of waiver, Lackie ends up in an internal contradiction. First, it contends that OptumRx's reliance on putative class members' arbitration agreements comes too late. But in the same breath, Lackie also contends that OptumRx's motion to deny class certification based on those same agreements is "premature," because any attempt to compel absent class members to arbitrate is not "proper" until a Rule 23 class is certified. Resp. 15. When a party argues that the opposite party has waived rights by asserting them *too quickly*, something has gone awry. But Lackie mischaracterizes the relief OptumRx requests. OptumRx has not sought to compel absent class members to arbitrate; that request would be premature at this stage. Rather, OptumRx has proactively moved to deny class certification because all putative class members have valid arbitration agreements. OptumRx's motion is neither premature nor too late: it is a sensible attempt to raise the impact of these arbitration agreements on the putative class at a time when class issues are, for the first time in the case, becoming relevant.

Lackie doesn't dispute the central point of OptumRx's motion: that when most or all putative class members are bound to arbitrate, class certification should be denied. Instead, Lackie ducks the issue altogether through its ill-conceived waiver argument, which the law does not support. Lackie also feigns confusion about the evidence submitted by OptumRx, but Lackie identifies no basis to question the validity or admissibility of OptumRx's evidence showing—on a pharmacy-by-pharmacy basis, with page citations to the arbitration provisions applicable to each pharmacy—that the putative class is subject to binding arbitration provisions with class action waivers. Lackie cannot dispute this evidence, and offers no good reason for further discovery.

Finally, Lackie concedes what has been clear all along: the Eighth Circuit and this Court compelled Lackie's Counts 4 and 5 to arbitration. Resp. 6. Yet Lackie says nothing about OptumRx's request for a stay pending arbitration of these counts. That silence speaks volumes. As OptumRx explained (and Lackie does not dispute), the Federal Arbitration Act mandates a stay of the entire case whenever an issue in the case is subject to arbitration. 9 U.S.C. § 3. And beyond being required by statute, a stay is the most practical course; it will avoid duplicative litigation and eliminate the risk of conflicting rulings across two forums. After denying certification, the Court should stay these proceedings so that Lackie and OptumRx can arbitrate Counts 4 and 5.

## ARGUMENT

## I.    OptumRx Did Not Waive Its Right To Arbitrate Against Putative Class Members.

Lackie devotes most of its response to its argument that OptumRx "waived arbitration as to the . . . members" of the still-putative class. Resp. 1-2; *accord id.* at 2, 5, 8-15. But Lackie also recognizes, as it must, that any motion to compel putative class members to arbitrate their claims would have been premature and futile. Lackie's waiver argument disregards the difference between individual and class claims, the importance of class certification, and foundational waiver

principles.  It also ignores that by filing this affirmative motion to deny class certification, even before Lackie moves for class certification, OptumRx has done *more* than what is required to preserve its arbitration rights as to the putative class.

**A.**  Lackie's arguments should be rejected because they are internally inconsistent.  In making this waiver argument, Lackie argues that OptumRx waited *too long* to raise class-member arbitration as an issue.  Resp. 9-10.  But in the same brief, Lackie also argues that OptumRx is raising these issues *too early* through a "premature" motion or a "preemptive strike."  *Id.* at 15.  All that leaves Lackie in the unusual position of arguing that OptumRx's motion is both too soon and too late.

**B.**  Both arguments rest on a mischaracterization of the relief OptumRx seeks at this stage in the case.  OptumRx has not, contrary to Lackie's assertion, sought to "compel arbitration as to each absent class member."  *Id.*  Rather, as OptumRx explained in detail, its argument is that this Court can and should deny class certification under Rule 23.  Mot. 9-19.  That would not result in any order compelling absent class members to arbitrate; it would simply pare this case back to what it should be focused on: Lackie's individual claims that the Eighth Circuit ruled may proceed in Court.  *Id.* at 16-19.

OptumRx's affirmative motion to deny class certification is expressly permitted under Rule 23 and recognized by the Eighth Circuit.  *E.g.*, *In re Baycol Prods. Litig.*, 593 F.3d 716, 721 n.2 (8th Cir. 2010), *vacated on other grounds*, 2011 WL 11747958 (8th Cir. Aug. 4, 2011) ("Rule 23 allows defendants to move preemptively to deny class certification prior to plaintiffs' moving for certification.").  Affirmative motions to deny class certification are appropriate in just this circumstance, where all or even many class members would be bound to arbitrate.  *E.g.*, *Lawson v. Grubhub, Inc.*, 13 F.4th 908, 911–913 (9th Cir. 2021) (denying class certification on "a motion

by Grubhub" where "[a]ll members of the . . . putative class" entered "agreements to arbitrate their claims and to waive their right to participate in a class action with regard to those claims").  Lackie nowhere disputes that affirmative motions to deny class certification are appropriate or that denial of certification is warranted where so many class members are bound to arbitrate.  By failing to "refute" those arguments, Lackie has "conce[ded]" them.  *Rowe v. Poplar Grove Operations, LLC*, 2025 WL 1184061, at *2 (E.D. Ark. Apr. 23, 2025).

To be sure, OptumRx could have waited until the plaintiff files a motion for class certification, and make an argument in its opposition that there can be no class, because most or all class members would be required to arbitrate and prohibited from participating in any judicial or class action.  Or OptumRx could have filed a motion to compel arbitration by members of any certified class, after this Court's ruling on class certification.  *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 234 (S.D.N.Y. 2020) ("In the context of class action litigation, courts repeatedly have held that the earliest time to move to compel arbitration is after class certification.").

But here, it is wasteful of everyone's time and resources to go through wide-ranging class discovery, experts, and class certification briefing on a variety of Rule 23 issues when there can clearly be no class based on the putative class's arbitration agreements—particularly given the Eighth Circuit's ruling that OptumRx's arbitration agreement with Lackie is valid and binding. That OptumRx has promptly raised this issue in an affirmative motion at this stage, rather than waiting for Lackie to file a motion for class certification or for this Court to rule on that motion many months down the road demonstrates diligence by OptumRx and is antithetical to waiver.

**C.** Apart from Lackie's self-inflicted "confusion" about compelling arbitration, it raises three reasons why OptumRx allegedly waived its arbitration rights as to absent class members.

None establishes that OptumRx "act[ed] inconsistently with its right to arbitrate" against putative class members, as explained below. *Lackie Drug Store, Inc. v. OptumRx*, 143 F.4th 985, 993 (8th Cir. 2025).

**1.**  Lackie initially argues that OptumRx waived its arbitration rights with respect to absent class members through its motions *against Lackie*.  Resp. 9, 11-13.  That argument rests on treating litigation conduct as to Lackie, the named plaintiff, as if it were identical to litigation conduct as to the class.  To underscore this point, Lackie reproduces verbatim the same chart it previously offered in arguing waiver as to Lackie, *compare id.* at 11-13, *with* Dkt. 137 at 16-18.  But all of the entries in Lackie's chart are about arguments made specific to Lackie—not the putative class members, which were not parties when any of these filings occurred.

Lackie is fundamentally mistaken about the difference between putative and certified classes.  Rule 23 provides a procedural mechanism for bringing the claims of putative class members before the court for resolution.  *Sprint Commc'ns Co., L.P. v. APCC Servs., Inc.*, 554 U.S. 269, 291 (2008).  But unless and until a class is certified, members of the putative class are *not* parties:  their claims are not before the court, and indeed the court lacks jurisdiction over them.  As the Supreme Court has held, the notion "that a nonnamed class is member is a party to the class-action litigation *before the class is certified*" is "surely erroneous."  *Smith v. Bayer Corp.*, 564 U.S. 299, 313 (2011) (citation and quotation marks omitted); *accord, e.g.*, *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013).

For this reason, numerous courts have held that it would be premature for a defendant to file an early motion to compel arbitration by putative class members, before any ruling on class certification.  "In the context of class action litigation, courts repeatedly have held that the earliest time to move to compel arbitration is *after* class certification."  *Chen-Oster*, 449 F. Supp. at 234

(emphasis added). This rule is rooted in a jurisdictional limitation, not merely a matter of judicial discretion: before any Rule 23 class is certified, "unnamed putative class members" are not before the court, and as a result "jurisdictional limitations preclude[] the District Court from entertaining [a defendant's] conditional motions to dismiss those members' claims as subject to arbitration." *In re Checking Acct. Overdraft Litig.*, 780 F.3d 1031, 1036–37 (11th Cir. 2015); *accord, e.g.*, *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018) (it would be "jurisdictionally impossible for" a district court "to rule on" motions to compel "speculative plaintiffs" to arbitration "before the class was certified"); *Jensen v. Cablevision Sys. Corp.*, 372 F. Supp. 3d 95, 123 (E.D.N.Y. 2019) (similar).

For this reason, early motions in a class action—including any motions to compel arbitration at the pleading stage—are necessarily focused on the named plaintiff, not the putative class. Lackie gets this basic doctrinal point wrong time and again. For example, Lackie asserts that OptumRx "join[ed] in a Rule 12(b)(6) motion with the other Defendants to have all of the Class's claims dismissed with prejudice." Resp. 14. But the Rule 12(b)(6) motion was about Lackie, not "the Class." *See, e.g.*, Dkt. 37 at 11 (defendants' joint motion to dismiss Lackie's ADTPA claim because "Lackie does not even allege it asked for any MAC lists from any one defendant"). OptumRx also filed a separate motion to dismiss that likewise addressed only Lackie. *See* Dkt. 40 at 4 ("Lackie Drug does not allege that it provided OptumRx with the requisite written notice or that it in anyway attempted to comply with" the applicable dispute resolution process). Lackie also cites OptumRx's negotiating and moving for a protective order and extension of case deadlines (Resp. 12-13), but these motions were purely procedural and, in any event, were focused on the named plaintiff, Lackie. Any order on these motions, prior to class certification, would have had no preclusive effect on the claims of putative class members, because no orders in

"proposed class action can[] legally bind members of the proposed class before the class is certified." *Standard Fire*, 568 U.S. at 593.

For the same reason, Lackie's arguments about discovery are misguided. All of OptumRx's discovery requests were directed to Lackie as the named plaintiff, not the members of any putative class. And until very recently, all of Lackie's requests were focused on its individual claims as well. *See, e.g.*, Sigler Decl., Ex. 1 at 3 (requesting "[a]ll contracts and other agreements you entered into with Lackie Drug Store, Inc"); *id.*, Ex. 2 at 5 (requesting "all communications and/or notifications you have made to Lackie Drug in accordance with A.C.A. § 17-92-507(c)(3)"). Indeed, it was not until Lackie's third production request, *after* the Eighth Circuit's ruling, that it began seeking documents and communications related to the putative class members' claims. *Id.*, Ex. 3 at 10 (requesting "all contracts and agreements and all communications and documents" between OptumRx and "any/each ARKANSAS PHARMACY(IES)."). And once Lackie put that broader category of discovery relevant to putative class members at issue, OptumRx promptly objected, and then promptly filed its motion when Lackie refused to acknowledge the impact of arbitration agreements on this case. *Id.*, Ex. 4 at 8 (objecting to requests because "absent class members are required to arbitrate any and all disputes . . .").

Lackie reads *Hill v. Xerox Business Services, LLC*, 59 F.4th 457 (9th Cir. 2023), as supporting its waiver argument. Resp. 8. But that case further reinforces the point that there wasn't any waiver. Unlike the defendant in *Hill*, OptumRx has never "sought to take advantage of litigation in federal court by requesting extensive discovery on unnamed parties to the case." *Id.* at 474. Nor has OptumRx ever "aggressively pursued" merits rulings on the putative class members' claims. *Id.* at 476 ("XBS 'actively litigated' this case through filing a motion for partial summary judgment" on "whether unnamed class members" qualified as "workers" under state law).

As discussed above, OptumRx has actively resisted Lackie's attempts to sweep in the claims of putative class members subject to arbitration agreements, including objecting to Lackie's class-wide merits discovery and filing an affirmative motion to deny class certification.

Because OptumRx's early motions and arguments addressed Lackie, not the putative class, there is no basis for any argument that OptumRx "acted inconsistently" with its right to arbitrate the claims of putative class members whose claims were not yet before the Court. *Lackie Drug Store*, 143 F.4th at 994.

**2.** Moving away from arguments about what OptumRx did in early litigation against Lackie, it shifts to something OptumRx did *not* do, contending that OptumRx waived its arbitration rights with respect to all putative class members by not moving to strike class allegations at the outset of this case. Resp. 14. That waiver argument is unprecedented and misguided.

Lackie bases its entire argument on the fact that another court granted a motion to strike Lackie's class allegations in another putative class action against a different defendant. Resp. 10 (citing *Lackie Drug Store, Inc. v. Express Scripts, Inc.*, 2025 WL 3214306 (E.D. Mo. Nov. 18, 2025)). From that lone decision granting a motion to strike, Lackie extrapolates that defendants should *always* file motions to strike class allegations at the Rule 12 stage—or else they will have waived any arguments about putative class members' arbitration agreements.

No authority, *Express Scripts* included, stands for that remarkable proposition. And numerous cases show why it should be rejected. To start, motions to strike class allegations are disfavored; they are not the sort of routine step that courts would expect every diligent litigant to take at the risk of waiver. As the Eighth Circuit recently recognized, courts are "split" over "whether class-action allegations may be stricken under Rule 12(f) prior to the filing of a motion for class-action certification," even when "certification is a clear impossibility." *Donelson v.*

8

*Ameriprise Fin. Servs., Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021); *see also, e.g.*, *Weske v. Samsung Elecs. Am., Inc.*, 934 F. Supp. 2d 698, 707 (D.N.J. 2013) ("Given the early stage of the proceedings, the Court finds that Samsung's request to strike the class allegations is premature.").  Indeed, the Eighth Circuit only recognized the availability of early motions to strike class allegations in *Donelson*, 999 F.3d at 1092, a case involving different circumstances not presented here, in which the decision came *after* the period when Lackie argues OptumRx was *required* to file a motion to strike class allegations.  In ruling that motions to strike class allegations are *permitted* in narrow circumstances, the Eighth Circuit in *Donelson* did not rule or even suggest that filing a motion to strike is *required*—let alone that it has always been a requirement dating back to before *Donelson* was decided.

It is also well-established that, as a general matter, motions to strike are "extreme" highly "disfavored," to be pursued only in extraordinary circumstances.  *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (striking allegations of fraud in an individual action due to the plaintiff's failure to satisfy pleading requirements).  It is also well-established that courts "cannot 'require a litigant to engage in futile gestures merely to avoid a claim of waiver.'" *Ackerberg v. Johnson*, 892 F.2d 1328, 1333 (8th Cir. 1989).  Yet Lackie's waiver argument conflicts with both lines of authority.

Indeed, Lackie itself previously agreed that courts should be "hesitant" to consider motions to strike class allegations, in opposing the motion to strike in the case on which it now relies, *Express Scripts*.  There, Lackie argued that "courts are 'hesitant' to strike class allegations before discovery, even when a court has 'serious doubts' about class viability."  Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss Plaintiffs' Class Action Complaint and Strike Plaintiffs' Class Allegations at 6, *Express Scripts*, 4:23- cv-1669, Dkt. 40 at 5 (March 28, 2024).

Quite right. That's why defendants often don't file early motions to strike class allegations even when they strong arguments against class certification. Any other rule requiring early motions to strike class allegations would work a dramatic change not just to waiver principles, but also to Rule 12 motions practice in every putative class action, which under Lackie's view would trigger defendants to file protective Rule 12(f) motions raising many potential defenses to class certification in a needless and wildly inefficient effort to dodge a waiver trap.

**3.** Lackie also mischaracterizes the Eighth Circuit's decision in this case, in an attempt to bolster its waiver argument.

Lackie asserts, without foundation, that the Eighth Circuit already ruled that OptumRx waived arbitration for putative class members. Resp. 8-11. But the Eighth Circuit's waiver analysis was entirely focused on Lackie—*i.e.*, whether "OptumRx knew that *Lackie's claims* were subject" to arbitration and concluded that, by litigating Lackie's claims in court, OptumRx had waived the argument that Lackie's claims must be referred to arbitration. *Lackie*, 143 F.4th at 993 (emphasis added). The court's subsequent analysis of the Provider Manual's delegation clause further evinces the decision's narrow focus on Lackie. For example, the court recognized that "Lackie now admits it is bound by the Network Agreement," and that "Lackie's sole argument on appeal" was that the court rather than the arbitrator had to decide issues of arbitrability. *Id.* at 998. The parties' briefs similarly were focused on Lackie's arbitration agreement, claims, allegations, and litigation conduct—not any putative class members. *E.g.*, Dkt. 126 at 2-5 (observing that "Lackie submitted claims each month throughout the operative period" and that "Lackie was a member of Health Mart Atlas" before joining "Elevate"); Dkt 137 at 10 (Lackie states that at "the outset of this case, OptumRx moved to dismiss *Lackie Drug's claims* alleging Lackie Drug had failed to comply with dispute resolution provisions" in its Provider Agreement) (emphasis added).

Lackie points to the Eighth Circuit's discussion of the class definition as somehow relevant to the waiver issue here. Resp. 10-11. But the Eighth Circuit only analyzed Lackie's proposed class definitions in its amended complaints for the purpose of determining whether OptumRx could revive its arbitration arguments *against Lackie*, because its class allegations were sufficiently "new" or "altered." *Lackie*, 143 F.4th at 995. The court conducted this analysis on the heels of its holding that OptumRx had waived arbitration as to particular claims asserted by *Lackie*, not the entire putative class. *See id.* In short, the Eighth Circuit did not suggest, much less hold, that its waiver reasoning applied to the broader class. Nor *could* the court of appeals have held as much: after all, nothing about arbitration as to absent class members was even before the court, and the Eighth Circuit's ruling could not bind putative class members under the well-established authorities discussed above.

**D.** As a final matter, Lackie suggests that it has filed a "cross-motion" "for a judicial finding that OptumRx waived arbitration as to the members of the [putative] Class." Resp. 2. There is no such thing as a "motion for a judicial finding," particularly not in this context. OptumRx moved this Court to deny class certification on the ground that putative class members would be bound to arbitrate their claims individually; Lackie opposes that motion based on the argument that OptumRx has waived any arbitration rights as to putative class members. Lackie's contrived "cross-motion" framing makes no sense—except as an effort to secure an improper sur-reply dressed as a "reply in support of a cross-motion." *E.g.*, *Corr. Officers Benevolent Ass'n of Rockland Cty. v. Kralik*, 2011 WL 1236135, at *1 n.2 (S.D.N.Y. Mar. 30, 2011) (declining to consider plaintiffs' "cross-motion" for a judicial finding that the defendant's policy was unconstitutional); *Jackson v. Annucci*, 2021 WL 2581340, at *2 n.3 (S.D.N.Y. June 23, 2021) (denying motion for default judgment made as a "cross-motion" in an opposition brief). The

Court should reject that effort and refuse to consider new arguments Lackie raises for the first time in its next filing.

## II.    Undisputed Evidence Shows That Putative Class Members Are Bound To Arbitrate Individually.

OptumRx submitted evidence with its opening brief showing with specificity that all putative class members are subject to binding arbitration agreements. Lackie's only response is to argue that OptumRx's evidence is confusing, because it consists of "thousands of pages" that Lackie finds difficult to follow. Resp. 4, 16-17. But the evidence is not confusing at all. Additionally, Lackie received all this evidence in discovery, Lackie has had months to analyze it—including a lengthy extension that Lackie requested and the Court granted. Dkt. 246. And despite the fact that Lackie bears the burden of showing why there should be a class under Rule 23, it has come forward with no evidence of its own to refute OptumRx's showing. This Court should disregard Lackie's efforts to bury its head in the sand and reject its argument to delay resolution of OptumRx's motion for needless additional discovery.

**A.**    Lackie first argues that it is OptumRx's burden to prove that all putative class members must arbitrate. Resp. 7. But once again, Lackie is not squaring up to OptumRx's motion. OptumRx did not file a motion to compel every member of the still-putative class to arbitrate. (After all, both sides agree that such a motion to compel would be premature before any class is certified. *Supra* at 1, 3-5.) OptumRx is instead arguing, as many courts have held, that an extensive number of arbitration agreements across a proposed class means that class certification should be denied. Mot. 16-19. And that distinction makes all the difference in which party bears the burden. Even where "the issue of class certification thus comes before the Court on Defendants' motion, the burden remains on Plaintiffs to prove that each of the required elements for class certification under Rule 23 has been satisfied." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 92

(S.D.N.Y. 2010); *accord, e.g.*, *Zulewski v. Hershey Co.*, 2013 WL 1748054, at *1 (N.D. Cal. Apr. 23, 2013) ("Even in cases where the defendant files the motion to deny class certification, the plaintiff bears the burden of demonstrating that each of Rule 23(a)'s four requirements and at least one requirement of Rule 23(b) are met."); *Victorino v. FCA US LLC*, 322 F.R.D. 403, 405 (S.D. Cal. 2017) (similar); *Pruitt v. Pers. Staffing Grp., LLC*, 2020 WL 3050330, at *3 (N.D. Ill. June 8, 2020) (same); *see also Payne v. Sieva Networks, Inc.*, 347 F.R.D. 224, 227 (N.D. Cal. 2024) (granting defendant's motion to deny class certification because plaintiff "failed to make the required showing as to predominance").

Accordingly, it is no answer for Lackie to claim confusion or uncertainty about whether every single putative class member must arbitrate.  It is *Lackie's burden* to show that there can be a class under Rule 23.  Furthermore, even if it is not "clear how many putative class members signed arbitration agreements," class certification is inappropriate if, as here, the evidence "supports an inference that a significant number did."  *Pablo v. ServiceMaster Glob. Holdings Inc.*, 2011 WL 3476473, at *2 (N.D. Cal. Aug. 9, 2011); *accord, e.g.*, *Lim v. Helio, LLC*, 2012 WL 12884439, at *3 (C.D. Cal. Apr. 18, 2012) (denying class certification because "the evidence before the Court strongly suggest[ed] that the vast majority of potential members signed arbitration agreements containing class action waivers").

**B.**  Under the proper standard, OptumRx has done more than enough to demonstrate that class certification should be denied because most or all putative class members would be bound to arbitrate and expressly waived any class claims.

The Eighth Circuit already held that pharmacies subject to OptumRx's Provider Manual are bound to the Provider Manual's arbitration and delegation provisions and class-action waiver.

*Lackie*, 143 F.4th at 998. And OptumRx has presented extensive evidence showing that all members of the putative class are subject to the Provider Manual. Specifically, OptumRx provided:

- A list of 785 putative class members with reimbursement revenue received from OptumRx, confirming their participation in the OptumRx network and performance under the OptumRx contracting framework. Dkt. 244 (Bates Decl.), Ex. A.

- A chart mapping each member's PSAO affiliation (or lack of one) based on OptumRx's NCPDP-based affiliation data. Dkt. 244 ("Arita Decl.") ¶ 32; Ex. BB.

- Operative Provider Agreements for the PSAOs (and the directly contracted pharmacies) covering the putative class. Those agreements incorporate by reference the Provider Manual (and, for the overwhelming majority, contain their own arbitration terms as well). Arita Decl., Exs. 12-72.

- The Provider Manuals themselves, showing the arbitration agreement, delegation provision, and class-action waiver that the Eighth Circuit held must be enforced via individual arbitration. Arita Decl., Exs. 1-2; *see Lackie*, 143 F.4th at 997–98.

- OptumRx's email/fax notices transmitting Provider Manual updates (including updates to arbitration provisions) and the corresponding transmission/notice records. Those records show that notice went out to putative class members and their PSAOs. Arita Decl. ¶¶ 13-26; Exs. 3-11, AA.

OptumRx produced all this information to Lackie in discovery, before filing its motion. Sigler Decl., Ex. 5, 6.

Lackie's criticisms of OptumRx's evidence fall flat. Lackie first objects that the evidence OptumRx presented is a "morass of material" spanning 4,000 or so pages. Resp. 7. To state the obvious, a party can hardly resist a motion by arguing there is *too much* evidence to support it.

Regardless, there is nothing "puzzl[ing]" (*id.* at 16) about the evidence OptumRx submitted. OptumRx detailed, in its motion and supporting declaration, what each category of evidence showed, with detailed explanations and pinpoint citations. Mot. 12-16. And in the lengthy period of months following OptumRx's discovery productions and Court filings, including the lengthy extension requested by Lackie and granted by this Court, Dkt. 243, Lackie has never asked for any additional information from OptumRx to clarify any purported misunderstandings.[1] Lackie's ostrich-like approach to OptumRx's evidence is no reason to discount the evidence altogether.

Lackie also mischaracterizes this Court's motion-to-dismiss ruling, asserting that it required OptumRx to "place in the record the agreements between the PSAOs and the Class members" in order to which agreements apply to which putative class members. Resp. 16-17. That ruling imposed no such requirement. On the contrary, it expressly contemplated that other evidence, besides "the agreement" between each putative class member and its PSAO (to which OptumRx is not a party) could be used to establish this connection. Dkt. 106 at 7.[2] OptumRx previously made this showing, to the Court's satisfaction, by filing a spreadsheet showing which pharmacy (Lackie) linked to which PSAO (Elevate). Resp. 3; Dkt. 175 at 14 (Ex. 2). That is precisely the same evidence on which OptumRx now relies to show which putative class member

---

[1] OptumRx repeatedly offered to answer Lackie's questions about putative class members' obligations to arbitrate. At Lackie's request, OptumRx produced in native Excel format the Arita Declaration exhibit showing each putative class members' PSAO affiliation. Sigler Decl., Ex. 6; *see* Arita Decl. Ex. BB. OptumRx also offered to stipulate to an extended briefing schedule to allow Lackie to review OptumRx's motion and exhibits. Lackie refused and instead twice filed motions for extensions, but did not seek clarification or otherwise reach out to OptumRx to resolve any supposed confusion. Dkt. 243; Dkt. 251. For convenience and the avoidance of doubt, OptumRx submits a new chart with this reply detailing exactly where to find each putative class member's arbitration agreements in the record. Sigler Decl., Ex. 7.

[2] The contracts between PSAOs and affiliated pharmacies are called "Participation Agreements" and are not in OptumRx's custody or control. For illustrative purposes, OptumRx included an unsigned example Elevate Participation Agreement as Exhibit 1 to its opening brief (Dkt. 240).

links to which PSAO agreement. *Compare* Dkt. 175 at 14 (Ex. 2) (spreadsheet tying Lackie to Elevate by NCPDP and chain code) *with* Arita Decl., Ex. BB (spreadsheet linking each putative class member to its PSAO by NCPDP and chain code); *see* Arita Decl., ¶ 32. In other words, Lackie's conceded obligation to arbitrate (as confirmed by the Eighth Circuit) and the obligation of putative class members to arbitrate have been demonstrated with the same evidence, making Lackie's demands for additional evidence of the class's PSAO affiliations baseless.

Lackie also argues that OptumRx "lacks the 'specific evidence' to demonstrate its arbitration terms were 'effectively communicated' to the Class members." Resp. 16. (citing *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 80 (Ark. 2005)). But *Sumner* does not support Lackie's argument. In *Sumner*, the Arkansas Supreme Court affirmed the denial of a motion to compel arbitration because the movant did not prove "the existence of a contract" requiring arbitration: the movant argued that it was the company's general "practice" to provide copies of the relevant agreement but could not show that consumers in fact received the contract. *Id.* at 577–79. But there is no existence question here. OptumRx has established agreements to arbitrate for each pharmacy: first, by way of negotiated Provider Agreements under ordinary principles of contract formation; and, second, through principles of estoppel and ratification, because all pharmacies obtained benefits under their contracts. Mot. 13. Moreover, unlike the *Sumner* defendant, OptumRx submitted specific evidence of emails and faxes to putative class members and their PSAOs, demonstrating *actual* rather than merely conceivable notice of Provider Manual updates. *See* Arita Decl. Ex. AA. Lackie does not acknowledge this evidence—but wishing away the evidence does not make this case like *Sumner* in any respect.

At bottom, Lackie's feigned confusion is little more than an attempt to delay resolution of OptumRx's motion. The relief OptumRx seeks is clear: there can be no class here because so

many members of the putative class would be bound to arbitrate.  Mot. 9-19.  And the basis for that relief—the widespread evidence of binding arbitration agreements across the putative class—is equally clear.

**C.**  Lackie closes with an argument that "the parties should engage in [additional] arbitration discovery" before any ruling on OptumRx's motion.  Resp. 17.  This Court should reject Lackie's invitation for delay.

Lackie claims to need additional discovery from its PSAO, Elevate, supposedly because "OptumRx's motion is grounded on an amendment to the 2014 Network Agreement negotiated by OptumRx and [Elevate]" in 2025, while the appeal was pending.  Resp. 5.  Lackie asserts that "[d]iscovery of how this all came about is necessary" before the Court rules on OptumRx's motion.  *Id.* at 6.  This argument fails for three reasons.

*First*, the 2025 amendment to the Elevate Provider Agreement—the specific document about which Lackie claims to need discovery—is completely irrelevant to most of the putative class (82%), which are not Elevate members and thus not subject to the 2025 amendment.  *See* Arita Decl., Ex. BB.  All of these putative class members are required to arbitrate for the reasons set out in OptumRx's motion and the Eighth Circuit's decision, for reasons having nothing to do with the 2025 amendment to the OptumRx/Elevate agreement.

*Second*, even for the subset of putative class members that are Elevate members, the 2025 amendment is beside the point.  The Eighth Circuit has already held that the *unamended* 2014 Elevate Provider Agreement already required arbitration by Elevate members, because it incorporated by reference the terms of the Provider Manual, which contains a mandatory arbitration provision.  *Lackie*, 143 F.4th at 998.  Because it is uncontested that every putative class member (including every Elevate member) is subject to the Provider Manual, they are bound to

arbitrate under the Eighth Circuit's reasoning, regardless of the 2025 amendment on which Lackie seeks discovery.

*Third*, Lackie's proposed discovery is a pointless fishing expedition. As detailed in OptumRx's concurrently filed opposition to Lackie's motion for sanctions, the 2025 Amendment was not the result of secret dealings behind Lackie's or the putative class members' backs. It arose from "lengthy," arms-length negotiations with a highly sophisticated PSAO dedicated to "always" negotiating "the best terms possible for the benefit of" its member pharmacies. Dkt. 254, Ex. D at 1; *accord* Arita Decl. ¶ 5 ("PSAOs are large organizations with substantial bargaining power."). And the authorities Lackie relies on in urging sanctions involved behavior by defendants that in no way resembles what Lackie alleges here.[3]

## III.    The Court Must Stay These Proceedings Pending Arbitration.

OptumRx's motion seeks two forms of relief: (1) denial of class certification, and (2) a stay of the entire proceeding pending the arbitration of Lackie's claims. Mot. 20-23; Dkt. 239. Nowhere in Lackie's lengthy response does it address OptumRx's stay request—neither the reasons why stay is mandatory under the Federal Arbitration Act, Mot. 20-22, nor the reasons a

---

[3] Lackie relies on two out-of-circuit authorities to support its request for discovery. In *Kleiner v. First National Bank of Atlanta*, 751 F.2d 1193 (11th Cir. 1985), the defendant launched a secret telephone campaign targeting putative class members to solicit opt-out commitments despite the court's warning that "the question of unsupervised [defendant] contacts with plaintiff class remained under advisement." *Id.* at 1197. The defendant artfully timed its solicitation efforts around the district judge's vacation and directed its agents to "proceed swiftly" in recognition of the fact that the judge "might halt" their solicitation efforts upon return. *Id.* at 1198. Nothing of the sort occurred here. Likewise, in *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005), the court held that arbitration provisions were unenforceable because the defendants "added them, without notice, after this litigation commenced." *Id.* at 254. Here, conversely, the Elevate pharmacies received notice of the updated arbitration provision both before and after it went into effect. *See* Arita Decl., Ex. AA. And in any event, Elevate pharmacies—Lackie included—were required to arbitrate even *before* this litigation and negotiations over the 2025 amendment commenced. *Lackie*, 143 F.4th at 998.

stay is independently warranted as a discretionary matter, *id.* at 22-23.  By declining to address the issue at all, Lackie has forfeited any opposition.

Under the Supreme Court's decision in *Smith v. Spizzirri*, 601 U.S. 472 (2024), when "a lawsuit involves *an* arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the *proceeding*."  *Id.* at 478 (emphasis added); *see* Mot. 20-22. Simply put, the FAA mandates that where, as here, some claims (Lackie's Counts 4 and 5) are subject to arbitration, the entire proceeding (including any non-arbitrable claims) must be paused to allow the arbitration to go forward.  Mot. 20-23.  Additionally, even beyond Section 3's mandatory framework, OptumRx pointed out that a discretionary stay pending arbitration would be appropriate here because the legal issues underlying Lackie's arbitrable and non-arbitrable counts are identical, creating a risk of inconsistent rulings in separate forums.  Mot. 22-23; *see LS Black Constructors, Inc./Loeffel Constr. v. Pilgrim Interiors, Inc.*, 2021 WL 3080961, at *2 (D. Minn. July 21, 2021).

Lackie concedes that the Eighth Circuit compelled Counts 4 and 5 to arbitration, Resp. 6, but it offers no response on the stay issues.  Like any party that fails to contest the detailed arguments of an opposing party, Lackie has forfeited the issue, and the Court should grant the relief OptumRx seeks.  *See, e.g.*, *Arkansas ex rel. McDaniel v. Fin. Ladder, Inc.*, 2014 WL 12611317, at *2 (Moody, J.) (E.D. Ark. June 5, 2014) (defendant "failed to contest the arguments the State has set forth in its motion" and thus "waived any arguments that may have been available to it"); Local Rule 7.2(f) ("The failure to timely respond to any nondispositive motion . . . shall be an adequate basis, without more, for granting the relief sought in said motion.").

**CONCLUSION**

This Court should deny class certification and stay these proceedings pending arbitration.


Dated:  January 30, 2026                  Respectfully submitted,

    By: */s/ Graham Talley*
Megan D. Hargraves (Ark. Bar No. 2008220)
Graham Talley (Ark. Bar No. 2015159)
**MITCHELL, WILLIAMS, SELIG,**
**GATES & WOODYARD, PLLC**
425 West Capitol Avenue, Suite 1800
Little Rock, Arkansas 72201
Phone: (501) 688-8800
Fax: (501) 688-8807
Email: mhargraves@mwlaw.com
       gtalley@mwlaw.com

Geoffrey M. Sigler (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
1700 M St., N.W.
Washington, DC 20036
Phone: (202) 955-8500
Email: gsigler@gibsondunn.com

**Counsel for Defendant OptumRx, Inc.**