IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

|  |  |
|---|---|
| **LACKIE DRUG STORE, INC., on Behalf of Itself and Arkansans Similarly Situated**<br><br>   Plaintiffs,<br><br>v.<br><br>**OPTUMRX, INC.**<br><br>   Defendant. | Case No. 4:20-CV-1515-JM<br><br>**CLASS ACTION** |

**PLAINTIFF'S REPLY MEMORANDUM IN FURTHER**

**SUPPORT OF MOTION FOR SANCTIONS AGAINST DEFENDANT**

COMES NOW Plaintiff Lackie Drug Store Inc. ("Lackie" or "Plaintiff") and respectfully files this reply memorandum in further support of his Motion for Sanctions against OptumRx, Inc. ("OptumRx" or "Defendant"). **Doc. 254.**

### INTRODUCTION

There are two major problems with Defendant's response to the motion. First, OptumRx did not address why it chose not to inform the Court about its re-negotiation of the litigation rights of the putative Class members during the pendency of this litigation. And second, Defendant should acknowledge that Elevate members within the

Class were not notified about this litigation or the potential implications of the 2025 Amendment on their legal rights in this case.  For all the reasons in the opening motion and brief, this reply, and any future argument entertained by this Court, the Motion for Sanctions should be granted in its entirety.[1]

## LAW ARGUMENT

### A. Once a Class Action Case is Filed, the Court is the Class's Protector Under Rule 23(d).

OptumRx suggests it was okay for it continue to negotiate away the dispute resolution terms in the 2014 Network Agreement in favor of arbitration, because the Class has not yet been certified. **Ds Brief, Pg. 11.**  This isn't true.  The Court became the Class's protector once the class action complaint was filed in January 2021.  **Doc. 18**. First, the language within Fed. R. Civ. Pro. 23(d) itself provides that it applies prior to class certification. Indeed, the rule grants district courts broad authority to issue orders that encompasses the entire class action proceeding. The following cases stand for this position:

1. *In re Currency Conversion Fee Antitrust Litigation*, 224 F.R.D. 555, 569-70 (S.D.N.Y. Oct. 15, 2004) (Holding arbitration terms added after the class action was filed but before class certification were not enforceable.

---

[1] This memorandum's purpose is to briefly respond to key points raised by Defendant in its opposition brief.  Indeed, Plaintiff adopts and incorporates its opening motion, brief and supporting documents, and any further argument made by Plaintiff's counsel at any possible hearing on the motion or otherwise permitted by the Court.

Defendants' failure to notify the district court of the communications with the Class and their additional failures to inform the Class of the pending litigation was in violation of Fed. R. Civ. Pro. 23(d) and improper.).

2. *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp.2d 237, 251 (S.D.N.Y. Mar. 9, 2025) (Denied reconsideration of district court's decision determining defendants had violated Rule 23(d) and that their arbitration terms were unenforceable. The putative class members rights in this litigation were protected as of the filing of the complaint.).

3. *McDowall v. Cogan*, 216 F.R.D. 46, 50 (E.D.N.Y. May 8, 2003) (Rule 23(e) applies even in the context of putative class actions.)

4. *Epps v. Wal-Mart Stores, Inc.*, 307 F.R.D. 487, 494 - 95 (E.D. Ark. May 21, 2015) (From the filing of the class action complaint, the members' legal rights are protected and even a defendant that offers to satisfy in full the plaintiff's individual claims before class certification is not permitted.)

5. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F.Supp.3d 216, 255 (S.D.N.Y. Mar. 26, 2020) (Finding the need for district courts to protect class members once the class action is filed but determined under the totality of circumstances the arbitration terms could be enforced.). This case was cited by Defendant and is discussed below.

6. *Hinds County, Miss. v. Wachovia Bank N.A.*, 790 F.Supp.2d 125, ___ (S.D.N.Y. July 28, 2011) (Recognized the district court's need, prior to

3

        class certification, to regulate communications with putative class members, particularly when a defendant attempts to alter the contours of the litigation or the availability of remedies.).

### B. OptumRx Misleadingly Minimalizes the Impact of its Actions.

Defendant says only "a few dozen" of Elevate members are Class members, and additionally, that 97% of Elevate's members are not Class members, and 82% of the Class are not members of Elevate. **Ds Brief, Pgs. 1, 13, and 18**. Where it gets these numbers and percentages is unclear. It appears defense counsel divides the number of Elevate member pharmacies (5,200) by the 150 Arkansas pharmacies within Elevate's network as demonstrated by Plaintiff in its opening moving materials. **Ps Mot., Pg. 4**. The 150 number translates to 12 dozen, and a half, which isn't just a "few" as OptumRx self-interestedly characterizes. Indeed, the 150 Arkansas pharmacies at issue is a numerous bunch of family-owned pharmacies scattered around the state, and moreover, is substantially numerous enough to be certified as a class under Rule 23. In fact, as few as thirty-six class members is sufficient to satisfy Rule 23's numerosity requirement. *Stephens Prod. Co. v. Mainer*, 2019 Ark. 118, 5, 571 S.W.3d 905, 908 (2019).

### C. Lackie Drug's Knowledge of Negotiations.

OptumRx says Lackie Drug had knowledge of the negotiations in 2023 and 2024. **Ds Brief, Pg. 11.** That's also wrong. On November 14, 2023, the Court compelled Elevate to produce its communications/negotiations with Defendant and for Mr. Peter Kounelis to sit for deposition, and thus, enforced Plaintiff's subpoena of August 2023. **Doc. 193**. However, Plaintiff's knowledge of these negotiations ended after Mr. Kounelis was

deposed on December 11, 2023. At the time of Mr. Kounelis's deposition, we knew Elevate firmly opposed Optum's push for mandatory arbitration.[2] **Ps Second Response to Motion to Compel Arbitration** (**Doc. 200**). Following Mr. Kounelis's deposition in December 2023, neither the Plaintiff nor its counsel communicated further with Elevate about these negotiations.[3] But OptumRx falsely stretched Lackie Drug's knowledge of its negotiations another year into 2024.[4]

More importantly, the "secrecy" referred to in the Motion for Sanctions refers mostly to OptumRx never informing the Court that it was going to change the dispute resolution term in the 2014 Network Agreement with the 2025 Amendment that would mandate arbitration.

### D. The Arbitration Terms Are Not Enforceable Because of Defendant's Violation of Rule 23(d).

The cases on this issue turn on the facts and the totality of the circumstances at issue, which is what Defendant's cited case held. *Chen-Oster*, 449 F.Supp.3d at 258. Here, the totality of the circumstances demonstrate a violation of Rule 23 that warrants a

---

[2] The 2014 Network Agreement's dispute resolution term required good faith attempts to resolve the dispute with possible mediation should good faith negotiations be unsuccessful. See OptumRx's Motion to Dismiss, Pgs. 3 and 4 (**Doc. 40**).

[3] Plaintiff's counsel agrees that Elevate revealed the 2025 Amendment to the 2014 Network Agreement to its members just before it was to take effect on April 1, 2025 (**Ds Brief, Pg. 2**), but at that time Lackie Drug had been out of Elevate's network for over a year having sold its business to Arcare at the end of 2023. **See Ps Response to Defendant's Motion to Compel, Pg. 2 (Doc. 273)**.

[4] Plaintiff is seeking arbitration-related discovery regarding Optum's Motion to Deny Class Certification (**Doc. 239**) and has also served a subpoena upon Elevate to discover these matters. These issues are the subject of several discovery motions. **Docs. 262 and 264**.

determination that the arbitration terms added in the 2025 Amendment are not enforceable. Those facts and circumstances are recited on **Pages 1 – 3 of Plaintiff's Motion for Sanctions** and incorporated here.

1. Critically important here, OptumRx negotiated for years with Elevate knowing that Elevate and its members resisted mandatory arbitration. As discussed above, the parties even went through a lengthy discovery process on this issue in summer and fall of 2023 culminating in Plaintiff's deposition of Mr. Kounelis in December. Mr. Kounelis reiterated Elevate's stance that it would not agree to mandatory arbitration. Then, in January of 2024, this Court ruled against OptumRx in denying its Motion to Compel Arbitration. Further, the Court found the 2014 Network Agreement controlled and did not provide for arbitration of the claims. **Order, Jan. 30, 2024 (Doc. 218)**.

2. Regardless of the Court's Order, Defendant carried on with negotiations with Elevate to change the dispute resolution term in the Network Agreement to mandatory arbitration and in deprivation of the Class members' rights.

3. Until Mr. Holecek's April 7, 2025, letter to undersigned counsel, all was quiet. Then, six days post the effective date of 2025 Amendment (after the deal was done), Mr. Holecek told undersigned counsel about the new amendment and his client's belief they and successfully negotiated remedial and litigation rights of the Class through their PSAO.

4. While the Class is represented by their PSAO, here they remain vulnerable because they don't control the PSAO. Elevate negotiates with the PBMs, but whatever it

agrees to is presented to its member pharmacies, including the Class members, on a take-it-or-leave-it basis. If the Class member wants to stay in the Elevate/OptumRx relationship, a substantial amount of pharmacy business, it must accept whatever is presented. Thus, *Chen-Oster* is clearly distinguishable because here the Class was not informed of this litigation, their rights within it, or how the Amendment would impact their rights here. Further, the class members in *Chen-Oster* were not within a like relationship because the Class members here remain vulnerable, and thus, deserving of the protection of this case and this Court. *Chen-Oster* is also distinguishable because there was no evidence of coercion, which undersigned counsel is trying to investigate. As of now, we don't have an adequate record of how the negotiations went nor do we know all the communications between OptumRx, Elevate, or the members of the Class. All such matters are proper for discovery and are subjects of several discovery motions on these issues. **Docs. 262 and 264**.

## CONCLUSION

This Court has supervisory authority over communications with class members under Rule 23(d). Here, OptumRx extinguished the dispute resolution rights of the Class within the 2014 Network Agreement without telling them about this litigation, and therefore, had a clear obligation to inform this Court and gain its approval of such communications. As such, the arbitration terms Defendant seeks to enforce in its Motion to Deny Class and Stay (**Doc. 239**), should not be enforced. *In re Currency Conversion Fee*

*Antitrust Litigation*, 361 F.Supp.2d at 251; *citing McDowall v. Cogan,* 216 F.R.D. 46, 50 (E.D.N.Y., May 8, 2003).

        Respectfully submitted,

        **POYNTER LAW GROUP, PLLC**

        */s/ Scott Poynter*
        _____
        Scott Poynter, AR Bar. 09077
        scott@poynterlawgroup.com
        Clay Ellis, AR Bar 2023183
        clay@poynterlawgroup.com
        4924 Kavanaugh Blvd.
        Little Rock, AR 72207
        (501) 812-3943

        James C. Wyly, AR Bar No. 90158
        jwyly@wylyrommel.com
        Sean F. Rommel, AR Bar No. 94158
        srommel@wylyrommel.com
        **WYLY-ROMMEL, PLLC**
        4004 Texas Boulevard
        Texarkana, TX 75503
        (903) 334-8646

        Michael Darren O'Quinn
        **LAW OFFICES OF DARREN O'QUINN PLLC**
        B. Ram Suri Professional Building
        36 Rahling Circle, Suite 4
        Little Rock, AR 72223
        (501) 817-3124
        darren@darrenoquinn.com

        Rodney P. Moore (96134)
        **WRIGHT, LINDSEY & JENNINGS LLP**
        200 West Capitol Avenue, Suite 2300
        Little Rock, Arkansas 72201-3699
        PH:    (501) 371-0808
        FX:    (501) 376-9442
        EM:    rmoore@wlj.com